UNITED STATES of America

v.

Melvin Henry CUMMINGS, doing business as Mel H. Cummings, Inc. and/or Conover Leasing Co.

Crim. A. No. 15959.

United States District Court
W. D. Pennsylvania.

May 18, 1960.

John Potter, Asst. U. S. Atty., Pittsburgh, Pa., for the United States.

Samuel M. Rosenzweig, Pittsburgh, Pa., for defendant.

WILLSON, District Judge.

The United States has filed an eight count information charging the defendant Melvin Henry Cummings with a violation of the provisions of the Automobile Information Disclosure Act, 15 U.S. C.A. § 1231 et seq. This statute was enacted July 7, 1958 and provides in part that " * * * Every manufacturer of new automobiles distributed in commerce shall * * * " affix thereto a label on which such manufacturers shall " * * endorse clearly, distinctly and legibly true and correct entries * * * " disclosing certain information concerning such automobile.

The information charges that the defendant on May 7, 1959 at Pittsburgh in

this district willfully removed the labels from some eight automobiles, each count being a separate and distinct offense referring to one of the eight automobiles.

Defendant challenges the constitutionality and the applicability of this statute to him because, he says in his brief, and this court understands that it is conceded, that the cars in question were shipped from Michigan in interstate commerce and thereafter came to rest in his showroom in Pittsburgh and were sold locally. The defendant says " * * * the whole nature of his business is the retail sale of automobiles to the general public in and about Allegheny County, Pennsylvania * * * " Defendant concedes, of course, that Congress has the power to regulate commerce among the several states but he says the interstate character of the transaction came to rest at his place of business in Pittsburgh and it was only when the interstate commerce feature of the transaction ended that the labels were alleged to have been removed.

Defendant contends that the Commerce Clause of the Constitution, art. 1, § 8, cl. 3, does not permit Congress to regulate acts of retail automobile dealers engaged solely in commerce within a state and that the Tenth Amendment strictly prohibits Congress from making laws which regulate intrastate activities. Under the circumstances says the defendant, the information filed against him is based upon an invalid statute and violates the safeguards afforded to him under the Fifth Amendment. He therefore seeks a dismissal of the charges against him.

To this court's knowledge this is the first challenge made against the constitutionality of this statute. The legislative history of the Automobile Information Disclosure Act is found in the U.S.Code Cong. and Adm.News 1958, p. 2902. The legislative history says that the purpose of the bill is as follows: House Report, No. 1958, June 24, 1958.

" * * * The primary purpose of the bill is to disclose the manufacturer's suggested retail price of the new automobile (passenger car or station wagon) so that the buyer will know what it is. This information is not available now.

"The present-day buyer of a new automobile is usually completely bewildered and unable to find his way through the marketing jungle in which the automobile dealers have become involved.

"This bill will restore the confidence of the automobile buyer. The disclosure of the manufacturer's suggested * * * price will help to minimize the advertising extravagances indulged in by some automobile dealers. * * * "

The need for legislation is discussed here and it is indicated that the bill was directed at the abuse of price packing found by the congressional committee to exist in the automobile business. The committee indicated that some six abuses were prevalent which this bill sought to correct. The House Report states:

" * * * The Automotive News reported the first quarter 1958 output of automobiles at 1,238,710, compared with 1,790,597 during the same period in 1957, 1,615,731 in 1956, and 1,995,543 in 1955 a banner year. At the time unsold used car stocks in the hands of dealers jumped to 869,000, the highest since April 1, 1956, and unsold used car stocks reached a 4-year high.

"The drop in automobile production has much to do with the fact that steel production has dropped to approximately 58 percent of the level of last year, demonstrating the effect of the automobile production on other basic industry. * * * "

It further states:

" * * * The individual purchaser cannot be blamed for his refusal to spend his savings on a new automobile or to obligate himself for years in the future when he simply cannot determine the price of a new car. This bill will go far in correcting the abuses which no manufac-

turer or dealer can unilaterally attach without being put at a competitive disadvantage. * * *"

Defendant cites as principal authority for his contention that the instant statute is invalid, the famous Schechter decision, (A. L. A. Schechter Poultry Corp. v. United States) 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570. In that decision the Supreme Court held invalid the National Industrial Recovery Act of 1933. Defendant cites other decisions pointing to the proposition that even though necessity and in some cases an emergency is present, nevertheless Congress is still bound by constitutional limitations when it comes to the regulation of intrastate business.

■ It is believed that this case presents however, a clear cut illustration of an instance where Congress, given an express power by the Constitution, may effectuate that power so as to correct an abuse affecting interstate commerce, even though in doing so, the congressional power reaches and to some extent burdens a purely intrastate transaction. In the instant case that burden if any, is the simple requirement that the label showing the manufacturers suggested retail price shall remain affixed to the automobile until it reaches the ultimate purchaser.

■■ In the now landmark decision of the Supreme Court, National Labor Relations Board v. Jones & Laughlin, 301 U.S. 1, at page 37, 57 S.Ct. 615, at page 624, 81 L.Ed. 893, the following language appears:

"* * * Although activities may be intrastate in character when separately considered, if they have such a close and substantial relation to interstate commerce that their control is essential or appropriate to protect that commerce from burdens and obstructions, Congress cannot be denied the power to exercise that control. * * *"

That decision upheld the constitutionality of the National Labor Relations Act.

It was upheld on the theory set forth in the quoted language. It seems to this court that the doctrine of substantial relation to interstate commerce has applicability to the present situation. The evil which Congress sought to correct was the inability of an individual purchaser to determine the price of a new car. The purchaser's confusion resulted in the reduction of interstate commerce in that automobiles could not be sold. This in turn diminished the demand for steel and in consequence generated a depression of activity in all aspects in that basic industry of the country which necessarily moved in interstate commerce, thereby producing a further adverse effect upon the flow of interstate commerce.

It seems correct to state that a sale of a car by a local dealer is purely commerce within a state. That transaction has such a close and substantial relation to interstate commerce, as is developed in the legislative history, so as to constitutionally sanction this regulation as an appropriate control to protect interstate commerce from burdens or obstructions.

Counsel for the parties have cited many other decisions on this general subject. It is believed that the several decisions cited by the government are applicable here, notably the Shreveport Rate Case (Houston, East & West Texas Ry. Co. v. United States), 234 U.S. 342, 34 S.Ct. 833, 58 L.Ed. 1341; and United States v. Sullivan, 332 U.S. 689, 68 S.Ct. 331, 92 L.Ed. 297. Defendant has cited in addition to the Schechter decision, Carter v. Carter Coal Co., 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160 and other decisions. However this court must conclude that the statute here is constitutional and otherwise a valid exercise of congressional power.

### Order of Court

And now, this 18th day of May, 1960, motion of defendant to dismiss the information is denied. Defendant is directed to appear for trial at the next criminal jury term.